IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Timothy Burch, | ) | C/A NO.:  3:16-2436-MBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Walker Morgan, LLC, William P. Walker, Jr., and S. Kirkpatrick Morgan, Jr. | ) ) | **COMPLAINT** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff, Timothy Burch, complaining of Defendants Walker Morgan, LLC, William P. Walker, Jr., and S. Kirkpatrick Morgan, Jr. would, by and through undersigned counsel, respectfully show unto the Court as follows:

**PARTIES**

1.      Timothy Burch (hereinafter "Plaintiff"), is a citizen and resident of Coffee County, Georgia.

2.      Defendant Walker Morgan, LLC, is a law firm that was formed as a limited liability company and which was created and exists under the laws of the State of South Carolina.  Walker Morgan is located Lexington County, South Carolina.  Defendant William P. Walker, Jr. is a lawyer and, upon information and belief, a citizen and resident of Lexington County, South Carolina, and a member of Defendant Walker Morgan, LLC.  Defendant S. Kirkpatrick Morgan, Jr. is a lawyer and, upon information and belief, a citizen and resident of Lexington County, South Carolina, and a member of Walker Morgan (hereinafter, collectively "Walker").

1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over these matters based upon 28 U.S.C.A. § 1331, as there are questions of law arising under federal statutes, and venue is proper under 28 U.S.C.A § 1391, as the Defendants reside in the District of South Carolina.

## FACTS

4.      Plaintiff was injured when a gas can he was using exploded after which was treated at the JMS Burn Center, Inc. in Augusta, Georgia, for severe burns to his body.  As set forth below, Walker had an alleged relationship with the Burn Center in which Walker's agent was allowed to review intake information on burn victims admitted to the Burn Center for the purposes of identifying profitable burn cases (without permission of the patients) and having the Burn Center internally recommend Walker as the lawyer to handle the case.  In exchange for this access and recommendation, Walker cut an illegal deal that ensured the Burn Center that the payment for its services would be maximized, rather than a lower negotiated amount to be discounted, or the discounted amount paid if submitted to insurance.  This was a clear conflict.

5.      Contrary to their obligations to Plaintiff, Walker also represented the Burn Center and its physicians in other matters concerning the collection of unpaid bills and participated in partnerships with the Burn Center and its physicians—information that was  kept secret from the Plaintiff, thereby creating a conflict of interest.  One of the things that Walker owned with the Burn Center and/or its members and physicians was an airplane, and possibly other personal property together as well.

2

6.      As a part of Walker's relationship with the Burn Center and/or its members and physicians, Walker was allowed to send in their employee/consultant to review the intake information provided by the Burn Center to determine which cases were the most profitable. After Walker's representative determined which cases were potentially good cases at Walker's request, the Burn Center represented to Plaintiff that he was eligible for a free investigation into a potential burn victim lawsuit.  No one disclosed Walker's relationship with the Burn Center.

7.      With Walker's help, agents would investigate, consult with burn victims and their families, and recruit them for Walker.  He would then become the burn victim's main contact with the Burn Center.

8.      As a part of this scheme, burn victims with potentially profitable lawsuits, such as Plaintiff, were sent to Walker, with the Burn Center and its physicians receiving remunerations and promises described above.

9.      Plaintiff entered into a fee agreement with Walker for their representation of him against the party or parties at fault for his burn injuries.  Under the fee agreement, Walker would receive 40% of any recovery.

10.      Plaintiff was never told about the conflicts of interest due to Walker's other representation of the Burn Center and its physicians, nor was Plaintiff informed of the fact that Walker had already promised the Burn Center and its physicians that their medical bills would not be subject to negotiation or discounts.

11.      Unbeknownst to Plaintiff, Walker had already agreed to pay the Burn Center and its physicians based on the full, non-discounted price for their services (and not negotiated lower prices or discounted insurance reimbursements) and, in some cases, paid overcharges.  Before

Plaintiff's case was settled, Walker asked the Burn Center to send over a lien for the costs of Plaintiff's medical care in order to protect their client, the Burn Center, from their other client, the Plaintiff.  This was done rather than to negotiate a discounted amount as is the required practice of plaintiff lawyers in personal injury cases and/or the failure to use insurance that may have been applicable.  By allowing and encouraging the Burn Center to file a lien, Walker and the Burn Center made sure that the doctors and lawyers received monies that should have gone to the burn victim who was in dire need of such funds.

12.    The purpose behind Walker's actions was to ensure that they continued to get the most profitable Burn Center cases.  Rather than protecting their client's interests, Walker acted out of greed to protect their revenue stream from the Burn Center.

13.    On one occasion and only after a threat of being reported to the South Carolina State Bar, Walker paid a portion of a client's medical costs out of its own fees to satisfy their clients' wishes to negotiate with the Burn Center and its physicians rather than risk its profitable relationships for future cases.

14.    As a part of this scheme, Walker obtained multiple cases that resulted in millions of dollars in attorneys' fees.

15.    Upon reaching a settlement, Walker received 40% off of the gross amount as their attorneys' fees.   Costs were then deducted from the remaining settlement funds, including large amounts for the Burn Center's bills, rather than a reduced amount that personal injury lawyers regularly and customarily negotiate for their clients or lower insurance reimbursements.  As a result, Plaintiff (and other clients of Walker) took home a substantially reduced amount of settlement proceeds.  Oddly, Plaintiff received an additional settlement disbursement of

4

$2,463.77 nearly two years after his original settlement was finalized. All of Walker's actions were taken without informing Plaintiff of the conflicts of interest. Walker Defendants' conflict of interest precluded them from taking a fee.

16.     Walker agreed that if the Burn Center would send profitable burn cases to their firm, the Burn Center's fees would not be subject to customary negotiations or discounts or lower insurance reimbursements, regardless of whether the burn victim had insurance or not. By agreeing to protect the Burn Center and its physicians instead of negotiating reduced fees, Walker was protecting the Burn Center and its physicians more vigorously than their own client.

## FOR A FIRST CAUSE OF ACTION
### (Professional Negligence)

17.     Paragraphs 1 through 16 hereinabove are reiterated and re-alleged as though set forth verbatim.

18.     Plaintiff and Walker had entered into a contract for representation and there was an attorney-client relationship between them.

19.     Walker had a duty to use such skill, prudence, and diligence as members of the legal profession commonly possess and exercise, in providing legal services to Plaintiff.

20.     Walker owed a duty of care and a duty of loyalty to Plaintiff, to vigorously represent his interests above all others.

21.     Walker breached these duties of care and loyalty in that they had a conflict of interest which entitled them to no fee.

22.     Walker placed their own interests and those of the Burn Center and its physicians over Plaintiff, Walker's own client.

23.     Walker's conduct fell below the applicable standard of care.

24.    As a direct and proximate result of Walker's actions, Plaintiff has suffered actual and consequential damages, for which the Walker Defendants are jointly and severally liable.

25.    Furthermore, the actions of Walker have been willful, wanton, reckless, and performed with a conscious indifference to the rights of Plaintiff, thereby entitling him to punitive damages. In addition, Walker should be required to disgorge all attorneys' fees collected from Plaintiff.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

26.    Paragraphs 1 through 25 hereinabove are reiterated and re-alleged as though set forth verbatim.

27.    Plaintiff and Walker were in a fiduciary relationship, as Walker Defendants were counsel for Plaintiff and deposited the settlement funds from Plaintiff's burn case in the law firm's trust account to hold in trust for Plaintiff.

28.    Walker breached its fiduciary duties to Plaintiff by entering into an arrangement, without knowledge or permission of Plaintiff, to pay the Burn Center and its physicians the full medical bills rather than a discounted, negotiated amount, thereby substantially reducing the amount of settlement funds Plaintiff ultimately received.

29.    Walker Defendants breached their fiduciary duties by having a conflict of interest in choosing the Burn Center and themselves over their client's best interests.

30.    As a direct and proximate result of Walker' actions, Plaintiff has suffered actual, consequential, and punitive damages, for which Walker Defendants are jointly and severally liable.

**FOR A THIRD CAUSE OF ACTION**
**(Violation of S.C. 39-5-10,** *et seq.***)**

31.    Paragraphs 1 through 30 hereinabove are reiterated and re-alleged as though set forth verbatim.

32.    South Carolina Code § 39-5-10, *et seq.*, contains the South Carolina Unfair Trade Practices Act.

33.    Section 39-5-20 makes it illegal for anyone to engage in any "unfair or deceptive acts or practices in the conduct of any trade or commerce."

34.    Walker Defendants have engaged in unfair or deceptive acts or practices while conducting their trade to wit:  Walker Defendants have entered into an agreement with the Burn Center and its physicians to pay their entire medical bills out of the settlement of Plaintiff's burn case, instead of negotiating a discounted amount; Defendants hid this agreement from their client, Plaintiff's Decedent, to his detriment.  Walker Defendants further engaged in unfair or deceptive acts or practices in that they had a conflict of interest and were thereby disloyal to their client and precluded from taking a fee.

35.    Plaintiff has suffered an ascertainable loss of money as a result of Walker's unfair and deceptive acts in that his settlement was substantially reduced by Walker's agreement to pay the Burn Center and its physicians' full medical bills rather than a negotiated, discounted amount.

36.    Walker Defendants knowingly and willingly violated S.C. Code 39-5-20, thereby entitling Plaintiff to treble damages.

37.    Walker Defendant's actions are capable of repetition and have been repeated with multiple burn victims/clients obtained from the Burn Center.

38.    As a direct and proximate result of Walker Defendant's actions, Plaintiff is entitled to actual damages, treble damages, and attorneys' fees.

WHEREFORE, Plaintiff prays for joint and several judgment against Defendants for actual, consequential, and punitive damages in an amount in to be more specifically proven at trial; disgorgement of attorneys' fees collected; together with attorneys' fees and the costs of this action, if permitted by law, and for such other and further relief as this Honorable Court may deem just and proper.

LEWIS BABCOCK L.L.P.

S/ A Camden Lewis
A. Camden Lewis, Fed. Bar No. 2669
J. Ryan Heiskell, Fed. Bar No. 76960
Post Office Box 11208
1513 Hampton Street (29201)
Columbia, South Carolina 29211-1208
Tel.:    (803) 771-8000
Fax:    (803) 733-3534
Email: acl@lewisbabcock.com
           jrh@lewisbabcock.com

*Attorneys for Plaintiff*

Columbia, South Carolina
July 1, 2016.

8